HENRY L. MASSAKER *v.* CHARLES MACKERLEY and wife.

1. Where a bill is filed to foreclose the equity of redemption, and for sale of property to satisfy what is due on a mortgage, it is no defence that the money would have been paid at the time it became due, had not the complainant, a year before, in conversation, told the defendant that he did not wish him to pay any more of the principal when it became due; and that if he needed it, he would give timely notice, and that no notice had been given.

2. Such a promise amounts to nothing, being made without consideration.

3. Where a bond and mortgage had been surreptitiously taken out of the complainant's possession, and the defendant did not doubt it, it was held to be no ground of defence, that the defendant was not bound to pay the money, unless the complainant produced the bond and endorsed the payment on it, or gave the defendant a sufficient indemnity against the bond and mortgage. The receipt of the complainant for the amount was good against all the world.

4. Such a defence is not of a character to throw the burthen of any cost upon the complainant.

On the 29th of March, 1849, the defendant, Mackerly, executed to the complainant two bonds; one to secure the payment of one thousand dollars, in one year, and the further sum of one thousand dollars in two years from date, with interst on the whole sum, payable annually; the other was to secure the sum of three thousand dollars, as follows: one thousand dollars on the first day of April, 1852; the further sum of one thousand dollars on the first of April, 1853; and the further sum of one thousand dollars on the first of April, 1854, with interest on the whole sum, payable annually. To secure the payment of these bonds, the defendants executed to the complainant a mortgage on certain lands which the complainant had conveyed to Mackerley, and to secure a part of the purchase money, of which the said bonds and mortgage were made and executed as aforesaid.

The bill was filed on the 28th day of May, 1852. It alleges that the first bond was paid at maturity; but that the sum of one thousand dollars, the principal due on the other bond on the first day of April, 1852, remains unpaid.

The bill further alleges that the said bond and mortgage are lost; that the complainant kept them locked up in his bureau, and that on or about the 2d of August, 1851, they were taken away; that after diligent search, the complainant has been unable to find the same, but believe that they were carried away by Hannah Massaker, his wife, who, about the time the bond and mortgage were taken, left his house without provocation, and has since resided in Morris county; that on the 1st of April, 1852, the defendant, Mackerly, paid the interest on the said bond, and upon the principal of one thousand dollars being demanded, said he had not provided the same. The bill alleges that the defendant has knowledge where the said bond and mortgage are.

The object of the bill is to foreclose the equity of redemption, and for sale of the property, to satisfy what is due on the mortgage.

On filing the bill, an injunction was granted, to prevent the payment of the money due, and to grow due on the lost bond, to any other person than the complainant.

The bill was answered by Charles Mackerley. He does not suggest, in his answer, any doubt as to the loss of the bond and mortgage, in the manner alleged by the complainant, but sets up the following defence: He says that on or about the 1st of April, 1851, at the time he made the last payment of one thousand dollars on the first bond, the complainant told him that he did not wish him to pay any more of the principal when the same became due; that all the complainant wanted was his interest, and that if the defendant paid the said principal, he, the complainant, would be obliged to loan it out again, and he wished the defendant would keep the money and pay him the interest therefor, or words to that effect. That the defendant replied that he did not like to have the matter remaining in that situation, because if he relied upon the complainant, and failed to raise the money when it became due, complainant might then call upon him for the said sum of money, and put defendant to great inconvenience to raise the same. Whereupon complainant told defendant he need have no fears on that account,

because that if he, the complainant, should happen to stand in need of the said payment when it became due, he would give the defendant timely notice of it, so that he would be able to raise the same. He says that, relying upon this promise of the complainant, he did not take especial pains to raise the whole of the said sum of one thonsand dollars, to make said payment on the 1st of April, 1852, as he otherwise might and would have done. He further says that on the 1st of April, 1852, he called on the complainant and told him he wished to pay the interest, but that he did not feel safe to pay the principal until the bond and mortgage could be found, so that the payment might be endorsed on said bond, to which complainant replied, he had promised the money to one Samuel Van Blarcom, if defendant paid it in. Whereupon defendant reminded complainant that he had said to defendant he did not want the money, and that his promising it to another, without giving defendant notice, was contrary to his agreement, which complainant did not deny, but replied that he thought now his bond and mortgage were gone, he ought to have his money, or words to that effect, but that the complainant, neither on that day, or at any other time before the commencement of this suit, made any other demand or request of payment. He further says that in the same conversation, he told complainant that if the bond and mortgage could be found, so that the payment could be endorsed thereon, he could and would raise the said payment in a very short time, if the said complainant would procure the said bond and mortgage, but he then insisted, and now, by his answer, insists that he could not, with safety, pay to the complainant the said sum of one thousand dollars, so long as the said bond and mortgage were outstanding, in the hands of some person unknown to the defendant, without some indemnity, more than a mere receipt, and without any satisfactory evidence that the said bond and mortgage had not been assigned, by the complainant, to some other person; that he was then willing, and told defendant he was willing to make the payment whenever he should be indemnified.

The answer admits that on or about the 1st of August,

1851, the said Hannah, wife of complainant, came to defendant's house, and told him that she had left complainant, and had taken his papers. That defendant asked her what papers? and she said she did not know; that she had a note of one Ackerman, and complainant's papers, done up in a package; that defendant immediately told her that the papers were of no use to her; but defendant says he has no recollection that the said Hannah made any mention whatever of the said bond and mortgage; that defendant supposed she had taken the papers back to complainant, until a day or two afterwards. Complainant called upon defendant and notified him that the bond and mortgage were gone, at which time the said Hannah denied that she had the said bond and mortgage, or that she had taken them away. Defendant denies all knowledge as to who took the said bond and mortgage, or as to who has them.

The defendant, by his answer, admits that, inasmuch as he was prevented from paying the said sum of one thousand dollars, by the request and solicitation of the complainant, and by his promise to notify defendant if he would need said payment, that it would be inequitable and unjust, and would be enabling the complainant to take an undue advantage of the defendant, for this court to decree a foreclosure and sale of the said mortgaged premises. The defendant further insists that, if he had not been prevented by the conduct of the complainant from preparing his said payment on the 1st of April, 1852, and if he had been ready to make such payment yet, that he was not bound to pay the one thousand dollars to complainant without the production of the said bond and mortgage, in order that the said payment might be credited and endorsed thereon, and that the defendant might have some satisfactory evidence that the said bond and mortgage had not been assigned by the complainant to some other person, or kept back, or concealed by him for some other purpose, or without some sufficient indemnity furnished to the defendant against the said bond and mortgage, and against all costs and damages.

The defendant offers now to pay the sum due, under the

order of the court, upon the production of the bond and mortgage, or upon the complainant's executing to him a sufficient indemnity.

To this answer, the complainant filed a replication on the 26th August, 1852, and proofs were taken.

*D. Thomson* and *J. Wilson*, for complainant.

*Thomas N. McCarter*, for defendants.

THE CHANCELLOR. It was unnecessary for the complainant to take issue upon the answer. The defence set up cannot deprive the complainant of the relief prayed for, nor is it of a character to throw the burthen of any costs upon the complainant. On the first of April, 1852, there was one thousand dollars due on the bond and mortgage. The first reason given by the defendant why he did not pay it, is that, a year before, in a conversation between the parties, the complainant told the defendant that he did not wish him to pay any more of the principal when the same became due; that all the complainant wanted was his interest; and that, if the defendant paid the principal, he, the complainant, would be obliged to lend it out again, and he wished the defendant would keep the money and pay him interest therefor; that the defendant replied that he did not like to have the matter remaining in that situation, because, if he relied upon the complainant, and failed to raise the money when it became due, the complainant might then call upon him for it, and put him to great inconvenience to raise the same; whereupon complainant told defendant he need have no fears on that account, because, if he, the complainant, should happen to stand in need of the money when it became due, he would give timely notice, so that the defendant would be able to raise the same. The defendant says that he relied upon this promise, and as the complainant gave him no notice, it is inequitable that the court should sustain these proceedings.

The promise amounts to nothing. It was without consideration, and was made in a manner, according to the defendant's

own statement, not to induce the defendant to rely upon it. Nor do I see that, under the circumstances, any moral delinquency can be fairly charged upon the complainant. When the money became due the case was different. He had lost the evidence of his debt. He then told the defendant he required payment, and he waited upon him for nearly two months. Was not this timely notice?

Another ground of defence is that the defendant was not bound to pay the money unless the complainant produced the bond and endorsed the payment on it, or gave the defendant a sufficient indemnity against the bond and mortgage; and that the court ought not to decree against him until the indemnity is given.

If the defendant was entitled to any indemnity before paying the money, he can derive no benefit from that fact in this suit, unless he shows he tendered himself ready to make the payment, and demanded such indemnity. But I do not think he was entitled to any indemnity. There is no reason to doubt the complainant's allegation, that the bond and mortgage had been surreptitiously taken out of his possession. The defendant did not doubt it. This he admits in his answer. Why was indemnity necessary? The receipt of the complainant for the thousand dollars was good against all the world. It was as good a protection to the defendant as any security the complainant could give him. No matter what disposition the complainant had made, or might make, of the bond and mortgage, such receipt would always be available as so much paid upon them.

Nor do I see any propriety now in this court's compelling the complainant to indemnify the defendant before making a final decree in the cause. The decree of this court will protect the defendant against any other claims upon the bond and mortgage.

The complainant is entitled to a reference, and to a final decree, with costs, upon the coming in of the master's report, stating the account, &c.